IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **REGINALD JONES,** #B58058, | |
| **Plaintiff,** | Case No. 19-cv-01386-SPM |
| v. | |
| **CHAD WALL,** | |
| **Defendant.** | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on the motion for summary judgment on the issue of failure to exhaust administrative remedies filed by Defendant Chad Wall. (Doc. 28). Plaintiff Reginald Jones filed a response in opposition. (Doc. 27). On July 9, 2021, the Court held an evidentiary hearing. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). For the reasons set forth below, the motion for summary judgment is denied.

## BACKGROUND

On November 21, 2019, Plaintiff Reginald Jones filed suit in *Jones v. Unknown Party,* No. 19-cv-01281-NJR, alleging that he was subjected to excessive force at Pinckneyville Correctional Center ("Pinckneyville") and Menard Correctional Center ("Menard"). He also claimed that he was denied grievance forms in retaliation for filing a grievance on Menard staff. On December 20, 2019, *Jones v. Unknown Party,* was severed into separate actions, and as a result, this case was opened. Jones filed a motion for leave to file an amended complaint in this case on February 28, 2020, which was granted. (Docs. 16, 18). In the First Amended Complaint, Jones claims that he was involved in a staff assault on July 15, 2019. (Doc. 19). Following the altercation, while

restrained and face down on the ground, Defendant Chad Wall sat on his back and intentionally tightened his handcuffs, causing lacerations to his wrists and nerve damage. Later that same day, he was transferred to Menard. (Doc. 31, p. 3). Jones is proceeding with an Eighth Amendment claim against Wall for the use of excessive force. (Doc. 20).

Defendant Wall filed for summary judgment arguing that Jones failed to exhaust his administrative remedies prior to commencement of this suit, as required pursuant to 42 U.S.C. § 1997e(a). (Doc. 28). Wall claims that after being transferred to Menard on July 15, 2019, Jones only submitted one grievance at the facility level before filing his complaint. This grievance, Grievance # 162-8-19, raises allegations that Jones was assaulted by several staff members upon his arrival at Menard. The grievance does not name Wall and does not make any claims related to conduct by Wall. Because the grievance does not raise any allegations of excessive force by Wall, the basis of this lawsuit, it does not serve to exhaust administrative remedies. Additionally, there is no record that Jones filed a grievance with the Administrative Review Board, as he is required to do under the Illinois Administrative Code when complaining about an incident that occurred at another facility.

Wall further argues that Jones's remedies were available to him. In the "grievance procedure" section of the civil complaint form submitted with the First Amended Complaint, Jones references his claims in *Jones v. Unknown Party* and alleges that he was denied grievance forms preventing him from filing a grievance regarding Wall's conduct within the sixty day deadline of the incident at Pinckneyville. (Doc. 19, p. 6-7). He claims that he wrote Counselor Sandra Quick and Warden Frank Lawrence asking for grievance forms but did not receive any additional forms. Jones also asserts he submitted a "plain paper grievance" on September 3, 2019, to the Administrative Review Board.

In response to these claims made in the First Amended Complaint, Wall argues in the motion for summary judgment that Jones was given an Orientation Manual shortly after his arrival at Menard informing him that "[g]rievance forms are available in all housing units upon request." (*See* Doc. 28-7, p. 42). Thus, even if Jones was not given grievance forms by Counselor Quick or Warden Lawrence, he could have obtained the necessary forms from other staff members, such as correctional officers, sergeants, or lieutenants in his housing unit.

Wall also argues that Jones was in fact given grievance forms from Counselor Quick. Wall claims that Jones received three grievance forms from Quick upon request in August 2019. (Doc. 28, p. 8). One form was used to submit grievance #162-8-19. Jones then chose to use one of the other forms to create a verbatim copy of that grievance, rather than use the form to grieve Wall's conduct. Wall argues that Jones cannot "avail himself to the grievance process and then argue that the process was made unavailable to him." (*Id.*). Finally, Wall puts forth that the Administrative Review Board has no record that Jones ever submitted any grievance for review after 2017.

In his response, Jones argues that his administrative remedies were unavailable to him because he was not given grievance forms. He claims that after his arrival at Menard, he received two, not three, grievance forms from his correctional counselor, Sandra Quick, on August 7, 2019. (Doc. 31, p. 5, 11, 14). He filed one grievance, grievance #162-8-19, on August 12, 2019, alleging that upon his arrival at Menard, correctional officers attempted to murder him. He kept the second grievance form and did not file it. (*Id.*). Jones used the second form to make a verbatim copy of grievance #162-8-19 because the law librarian would not copy grievance #162-8-19 for him until he had submitted it for review at the facility and received the signature of a counselor, grievance officer, or the warden. (*Id.*).

According to Jones, he then attempted to obtain additional grievance forms from Quick so

that he could grieve Wall's excessive force conduct and "was unable to acquire one." (Doc. 31, p. 5). Specifically, he wrote Quick on August 18, 2019, and August 25, 2019, asking for additional forms. (*Id.* at p. 6). He also wrote a letter to the Administrative Review Board on August 26, 2019, informing the members that the staff at Menard was refusing to give him grievance forms and that he needed the forms in order to timely grieve issues that occurred at Pinckneyville. (*Id.* at p. 27-28). Finally, he sent a grievance written on plain paper, not on a grievance form, to the Administrative Review Board on September 3, 2019, as a last resort to grieve the excessive force incident at Pinckneyville. (*Id*. at p. 7, 10). He did not receive an answer. Jones argues that because he was housed in the segregation unit, he was unable to ask other correctional staff in his housing unit for grievance forms. (*Id.* at p. 13).

Finally, Jones argues that Grievance #162-8-19 was ultimately inexhaustible because it is written on a 2012 grievance form that had been superseded by a 2018 revised form. (Doc. 31, p. 6). Because Quick had given him old grievance forms, any other expired form she would have given him would also have been inexhaustible.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). On summary judgment, the district court's role is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary judgment on the issue of exhaustion, however, the Seventh Circuit explains that a

different standard applies. *Pavey v. Conley*, 544 F.3d at 739-41. The Seventh Circuit in *Pavey* held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are to be determined by the judge, not a jury. *Pavey*, 544 at 740-41. A summary judgment motion on exhaustion grounds typically requires a hearing to decide any contested issues regarding exhaustion, and a judge may make limited findings at that time. *Id*. at 742.

## II. Exhaustion of Administrative Remedies

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not

fully satisfy the prisoner. *See Pozo,* 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

### *III. Grievance Procedures*

As an inmate in the custody of Illinois Department of Corrections ("IDOC"), Jones was required to follow the grievance procedure laid out in the Illinois Administrative Code ("Code"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. Under the Code, inmates are generally required to follow a three step process which:

> [B]egins with an attempt by the inmate to resolve the issue informally through a prison counselor, then proceeds to review at the institutional level, and finally ends with an administrative appeal to the director of the Department of Corrections, who has delegated review authority to the ARB.

*Glick v. Walker,* 385 F. App'x 579, 581 (7th Cir. 2010) (citing 20 ILL. ADMIN. CODE §§ 504.810(a), 504.850(a)). There are exceptions to following this process, and the Code delineates certain instances in which an inmate must submit a grievance directly to the Administrative Review Board ("ARB"), rather than through the usual channels available at the facility. Relevant here is Section 504.870, which provides that when an inmate is grieving "issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues," the inmate must submit the grievance directly to the ARB. 28 ILL. ADMIN. CODE § 504.870(a)(4).

## DISCUSSION

At the hearing, Jones testified that he has been incarcerated within IDOC at various facilities for approximately twenty-six years and is familiar with the grievance process. He acknowledged that because he was transferred from Pinckneyville, where the alleged event occurred, IDOC grievance procedure required him to file a grievance directly with the ARB, rather than follow the typical three step grievance process at Menard. He testified he received two forms

from Counselor Quick on August 7, 2019, one he used for grievance #162-8-19 and the other form he used to make a verbatim copy of grievance #162-8-19 because the library would not copy the grievance for him. He requested additional grievance forms from Quick by writing her on two different occasions. Jones testified he also wrote the ARB and Warden Lawrence about the inability to obtain grievance forms but did not receive additional forms within sixty days of the incident with Wall so that he could timely file a grievance with the ARB. (*See Id.* at p. 27). After not receiving forms, he attempted to grieve Wall's conduct directly to the ARB by writing his complaints on a sheet of paper, not an official grievance form, and sent his complaints to the ARB on September 3, 2019. He did not receive a response.

Jones presented a single witness, Grievance Officer Kelly Pierce, whom he questioned regarding the authenticity of grievance #162-8-19 and corresponding affidavit, as entered into the record by Defense Counsel. (Doc. 28-5). Although he testified that grievance #162-8-19 did not grieve the issues in this case, he argued the grievance was relevant to demonstrating the deficiencies of the grievance process at Menard. Wall did not present any witnesses.

The Court finds that Wall has not met his burden of establishing that the administrative process was available to Jones and that he failed to pursue it. *See Davis v. Mason*, 881 F. 3d 982, 985 (7th Cir. 2018) (it was not an inmate's "burden to establish that the grievance process was unavailable; it was the officers' burden to show that [the inmate] did not exhaust available remedies"). As the Seventh Circuit has stated, administrative remedies must be "available in fact and not merely in form." *Schultz v. Pugh,* 728 F. 3d 619, 620 (7th Cir. 2013). Other than pointing to the provisions in the Orientation Manual stating that grievance forms are available in all housing units, Wall has not presented any evidence rebutting Jones's testimony that in practice he was not able to freely verbally request forms from staff while in segregation. *See Wilder v. Sutton,* 310 F.

App'x 10, 13 (7th Cir. 2009) (the availability of a remedy does not depend on the regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue").

There is also nothing in the record disputing Jones's contention that he attempted to obtain grievance forms from Counselor Quick and Warden Lawrence through written requests. Jones has provided the Court with copies of the letters he sent. (Doc. 19, p. 13; Doc. 31, p. 20, 31). On the letter dated August 18, 2019, it is written that Jones was placed "on list to receive one," confirming that at least one letter was received by Menard staff. (Doc. 31, p. 20). Then for unexplained reasons, his request ultimately went unanswered.

The Court is also not persuaded that the two grievance forms[1] received directly from Counselor Quick on August 7, 2019 while she was visiting inmates on rounds in the segregation unit demonstrates that the grievance procedures were available to Jones. (*See* Doc. 28-6, p. 1; Doc. 28-8, p. 11-12, 27). Jones used these two forms given to him to grieve and keep record of his grievance related to the alleged assault on him by Menard officers. Regardless of how Jones used the two grievances previously provided to him, he required an additional form to grieve his claims against Defendant Wall. He was unable to verbally request them from staff and his written requests went unanswered. Thus, the Court cannot conclude that the remedies were available to him.

Finally, the Court must address the extent to which it will consider the rulings in other cases litigated by Jones in this District. At the hearing, during closing arguments, Defense Counsel argued that the issue regarding whether grievance forms were available to Jones while he was in

---

[1] Jones repeatedly contends in this case that he received two grievance forms directly from Quick on August 7, 2019. Wall argues that "Plaintiff admitted that, while incarcerated at Menard following his transfer on July 15, 2019, he received three (3) grievance forms from Sara Quick upon request." (Doc. 28, p. 8). In support of this argument, Wall provides the transcript from the preliminary injunction hearing in *Jones v. Unknown Party*. (Doc. 28, p. 8). However, in the transcript, when asked by Defense Counsel if he received another grievance from Quick, other than the two grievances received on August 7, Jones answered no. (Doc. 28-8, p. 11-12; *see also* p. 10, 27, 29).

the segregation at Menard, as provided in the Orientation Manual, has already been litigated in two other cases in this District before Chief Judge Rosenstengel and District Judge Yandle. *See Jones v. Unknown Party,* No. 19-cv-01281-NJR; *Jones v. Lawrence,* No. 20-cv-00158-SMY. Defense Counsel claimed that in both cases, the Court found that Jones had access to the grievance process during the same time period at issue in this case. Jones also argued at the *Pavey* hearing that the transcripts from the hearings on the motions for summary judgment regarding exhaustion in *Jones v. Unknown Party* and *Jones v. Lawrence* would clarify his arguments.

The Court has taken judicial notice of the testimony provided during the preliminary injunction hearing in *Jones v. Unknown Party* because both parties have referenced testimony given at that hearing and provided copies of the transcript with their briefs. (*See* Doc. 28-8; Doc. 31, p. 19). To the extent, however, the parties are asking the Court to further take judicial notice of the findings of fact in those cases or for the application of issue preclusion regarding the availability of Jones's administrative remedies, the requests are denied. These issues have not been sufficiently briefed or argued. *See Tobey v. Chibucos*, 890 F. 3d 634, 648 (7th Cir. 2018) ("a court may judicially notice only a fact that is not subject to reasonable dispute"); *E.E.O.C. v. AutoZone, Inc.,* 707 F. 3d 824, 831-32 (7th Cir. 2013) ("issue preclusion is an affirmative defense and the party asserting it has the burden of proof"). Neither will the Court read through the transcripts from other cases to formulate arguments or find support for the parties' positions.

Because Defendant Wall has failed to demonstrate that grievance forms were available to Jones, the motion for summary judgment is denied.

## MOTION FOR SANCTIONS

Prior to the hearing, Jones filed a motion asking the Court to order Defendant Wall to produce the original grievance #162-8-19 and corresponding affidavit. (Doc. 47). He argued that

the copy of grievance #162-8-19 filed as Exhibit E (Doc. 28-5) to Wall's motion for summary judgment was not a copy of the original grievance he filed and was fraudulent. Exhibit E is cropped short and the bottom part of the page is not visible. Jones claimed Exhibit E also does not have a date stamp placed on the grievance by the grievance office at Menard. The Court granted in part the Jones's motion and directed Wall to file a new complete copy of the original grievance and affidavit. (Doc. 49). Wall was also directed to produce the original documents at the video conference hearing or provide an explanation as to why the documents were unavailable.

At the hearing, Jones called Grievance Officer Kelly Pierce as a witness to speak to the inconsistencies of grievance #162-8-19 filed as Exhibit E and the copy of the grievance #162-8-19 filed as a supplement, Exhibit I, at the Court's direction. (*See* Doc. 53-1). Pierce produced Jones's master file. She testified that the master file contained the original grievance but only a copy of the affidavit. Pierce explained that once grievance #162-8-19 and the affidavit were reviewed and received a response from the counselor, the original grievance and affidavit would have been returned to Jones. For the original affidavit to be in the master file, Jones would have had to resubmit both the original affidavit along with the grievance to the grievance officer for further review. Pierce testified that she was not aware of whether Jones resubmitted the original affidavit along with grievance #162-8-19 for review by the grievance officer, but because it was not in the master file, she was under the belief Jones had not. She further stated that Exhibit E was a copy of the grievance after it had been reviewed from the counselor ("first level review"), while the Exhibit I was copy of the grievance after it received review by a grievance officer ("second level review"), explaining why Exhibit I and the grievance presented at the hearing had additional markings.

Jones has now filed a motion for sanctions against Defense Counsel under Federal Rules

of Civil Procedure 11 and 37. (Doc. 55). He argues that sanctions should be imposed because the original documents, grievance #162-8-19 and the corresponding affidavit, were not produced at the hearing as directed by the Court. Jones argues that it is clear that the grievance presented at the hearing and filed as Exhibit I is not the original because the grievance number is written in the top right corner in red pen. When he received his grievance back from the warden in August of 2019, the grievance number was written on the left side of the grievance in red marker. Based on these markings, Jones claims that the grievance presented at the hearing was not the original grievance he filed at Menard. He could also tell from "his naked eye" that the "grievance produced on 7-9-21 was not the live ink version." (Doc. 59, p.3).

      Jones claims that Defense Counsel also failed to produce the original affidavit attached to grievance and permitted Pierce to perjure herself by allowing her to falsely testify that a grievance does not receive a grievance number until reviewed by a grievance officer. (Doc. 55, p. 3). Jones argues that grievance #162-8-19 received its number earlier, when initially filed as an emergency and review by the warden. Because Defense Counsel has violated the Court's order and failed to produce the original documents, he claims sanctions are warranted.

      As the Court explained on the record, Jones has not presented any evidence that Defense Counsel engaged in conduct warranting sanctions. Defense Counsel was directed to produce the original documents at the hearing or provide a reason why the originals were not available, and this was done. Jones's contentions that the grievance presented at the hearing was not in fact the original and that the original affidavit should be in the master file because he filed it with the grievance officer for review are disputed issues of fact. Even if true, Jones's assertions do not demonstrate misconduct by Defense Counsel. There is no evidence that Defense Counsel had any role in how grievances are received, marked, copied, or retained in the master file at Menard. She

simply requests records from IDOC and relies on IDOC staff to give her a complete record.

Finally, Jones's understanding of Pierce's testimony regarding when the grievance received a number is incorrect. Pierce testified twice that when the grievance office receives a grievance marked as an emergency for the warden's review, the grievance is assigned a number and then sent to the warden. This is the same procedure Jones recounts in his motion. (Doc. 55, p. 3). Jones has not established that she made a false statement at the hearing regarding grievance procedure. The Court finds no reason to issue sanctions, and the motion is denied.

### MOTION FOR TRANSCRIPTS AND MOTION FOR PRODUCTION OF DOCUMENTS

Jones has also filed a second motion asking for a transcript of the *Pavey* hearing paid for by the Court. (Doc. 61). He claims that a transcript is necessary to support his motion for sanctions. He has also filed a motion asking the Court to order production of the original grievance #169-8-19 and the corresponding affidavit and to appoint a handwriting expert so that it can be determined if the grievance presented by Pierce at the hearing was in fact the original as claimed. (Doc. 60). Jones asserts that production of these documents is necessary for the Court's resolution of the issue of sanctions. The motions are denied. The motion for sanctions has been fully briefed. Jones has presented his arguments for why sanctions are warranted at the hearing and by filing a motion. A copy of the transcript, further documentation, or evidence is not necessary for the Court to rule on the motion.

### DISPOSITION

For the reasons stated above, the motion for summary judgment on the issue of failure to exhaust administrative remedies (Doc. 27) filed by Defendant Wall is **DENIED.** The stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

The Motion for Sanctions (Doc. 55), the Motion for Production of Documents (Doc. 60), and the Motion for Transcript (Doc. 61) filed by Plaintiff Jones are **DENIED**.

**IT IS SO ORDERED.**

**DATED:**   August 18, 2021

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**
