IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **REGINALD JONES,** #B58058, <br><br>    Plaintiff, <br><br> v. <br><br> **CHAD WALL,** <br><br>    Defendant. | Case No. 19-cv-01386-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  This matter is before the Court on various motions filed by Plaintiff Reginald Jones.

**1. Motion to Compel Service of Subpoena (Doc. 128, 133, 135, 155)**

  On October 25, 2021, the Court granted Jones's request for subpoenas and directed the Clerk to issue him two signed, but otherwise blank, subpoenas. (Doc. 74). Jones requested the subpoenas in order for him to request copies of grievances he filed with the Office of Inspector General. Jones did not receive the subpoenas, and on March 8, 2022, the Court resent Jones two additional subpoenas. (Doc. 114). Jones received the subpoenas a few days later on March 14, 2022. (*See* Doc. 128). On March 31, 2022, Jones filed the motion to compel service of subpoena currently before the Court.

  Jones asks the Court to intervene in the service of the subpoenas. (Doc. 128). On March 22, 2022, he sent one of the subpoenas, proof of service document, and the Court's Order at Doc. 74 to the law library for copies using institutional mail. Jones did not receive any copies and the originals were not returned to him. He sent a letter to the law library inquiring about his copies and received the response, "your order was processed on 3/22/2022 per photocopy log." (*Id.* at p. 7).

Jones then sent a follow-up letter to the law librarian on April 6, 2022, asking for a copy of the money voucher indicating he paid for the copies sent on March 22. The law librarian sent Jones a copy of the money vouchers dated March 20 and March 21 with a notation stating, "copies of vouchers around 3/22/2022." (Doc. 135, p. 7). These vouchers did not include money vouchers for the subpoena and attached documents. Jones seeks the Court's assistance in copying and serving his subpoenas. (Doc. 128, 133, 135, 155).

Defendant Wall was directed by the Court to respond to allegations and filed a response on May 2, 2022. (Doc. 150). In the response, Wall states that as an employee of Pinckneyville Correctional Center, not Menard Correctional Center where Jones is currently incarcerated, he has no knowledge of the events occurring at Menard and cannot speak on behalf of the law librarian. To the extent Jones is seeking an order from the Court, ordering service of a subpoena upon a non-party by the U.S. Marshalls Service, Wall argues that the documents which Jones seeks by way of subpoena are not related to his claim of excessive force in this case, and therefore are irrelevant. As such, Wall asserts it would be a waste of the Court's resources and the time of the U.S. Marshalls to grant Jones's request. To the extent Jones is seeking injunctive relief, Wall states that the Court does not have jurisdiction over the employees at Menard and the request is outside the scope of the First Amended Complaint, which deals with excessive force at Pinckneyville. For these reasons, Wall asks the Court to deny the motion.

The Court will **GRANT in part** the motion to compel subpoenas. (Doc. 128). The Court finds it troubling that when initially Jones inquired about his subpoena copies sent to the law library on March 22, he was notified that his request was processed on March 22. Then when he requested copies of payment receipts, he was given copies of vouchers "around" March 22. The law library did not follow-up with this discrepancy or Jones's assertions that his subpoenas, issued by this Court, had been lost or misplaced by staff at the facility. Therefore, the Clerk of Court will be

directed to send to the litigation coordinator at Menard a single signed, but otherwise blank subpoena. When filling out the subpoena, Jones is reminded that he shall give a reasonable time for response by marking the "Date and Time:" field as follows: "14 days after receipt." Defense Counsel will coordinate with the ligation coordinator to ensure that the subpoena is delivered to Jones and that he is able to make copies of *both* subpoenas in his possession. Defense Counsel shall file a notice with the Court by **July 22, 2022,** confirming compliance with this Order and that Jones received the subpoenas and was able to make the required copies.

The Court will not assist Jones in serving the subpoenas. As he has been advised, Jones is responsible for serving the subpoenas in accordance with Federal Rule of Civil Procedure 45, and he is also responsible for paying the associated costs, even though the Court has found him to be indigent. (*See* Doc. 74).

**II. Motion to Compel Production of Document (Doc. 134, 149)**

Jones asks the Court to compel Defendant Wall to produce an incident report from Danville Correctional Center issued on November 10, 2015, that he requested on February 13, 2022. (Doc. 134). He claims that he sent Defense Counsel a follow-up letter after not receiving the document but has not received a response.

Wall states that he received Jones's Third Request for Production of Documents seeking "IDOC incident report filed in Danville Correctional on or around the date of: November 10, 2015…" on February 16, 2022. (Doc. 144). He provided Jones a timely response objecting to the production of the document as it is irrelevant and not proportional to the needs of the case. (Doc. 144). Wall contends that Jones misleads the Court by stating he has not received any response to his production request. Wall points to the follow-up letter sent to Defense Counsel that Jones filed as an exhibit. In the letter, Jones writes, "I wanted to give you a chance to reconsider your position on the production of the 11-10-15 incident report as requested." (Doc. 134, p. 3). Wall argues that

the incident report authored by an individual at Danville Correctional Center over four years prior to allegations at Pinckneyville raised in this case would be wholly irrelevant to the ultimate issue of whether or not he used excessive force against Jones on July 15, 2019.

Jones filed a reply explaining that he is requesting the incident report in order to show "systematic denials of housing for PC being not limited to one facility." (Doc. 149). He also says the document will be used to provide a "structural basis for the move to Unit #5 from Unit #4 in Pinckneyville on 7-12-19, and to effectively question the falsehoods listed by staff in official …documents from on and around 7-15-19; prior to and after the staff assault and excessive force related to this cause." (*Id.* at p. 3).

The motion to compel the production of an incident report from 2015 is **DENIED**. (Doc. 134). The Court understands that Jones believes that there are years of mistreatment regarding his housing assignments that ultimately led to the alleged incident on July 15, 2019 at Pinckneyville and continue at Menard to this day. If he chooses, Jones may provide an affidavit testifying to such incidents when responding to any motion for summary judgment. However, the Court does not find that an incident report written by a staff member at a different facility four years prior to the alleged use of excessive force is relevant to Jones's claim regarding Wall's conduct. The fact that Jones mentions the incident report in grievance he wrote in December 2015 and produced during discovery does not make the incident relevant. Rather, it shows Jones's continual discontent with his housing assignments while incarcerated. Jones is reminded that allegations of conspiracy and retaliation are outside the scope of this lawsuit.

**III. Motion to Compel Additional 13 Requests for Production (Doc. 143, 164)**

In the Scheduling and Discovery Order, the Court stated that each party was limited to serving 15 interrogatories and 15 requests for production of documents. (Doc. 63). The parties were instructed that these limits may be increased for good cause shown. Jones has filed a motion

asking the Court to allow him 13 additional document production requests. (Doc. 143). Defendant Wall filed a response in opposition, and Jones filed a reply. (Doc. 158, 164). The Court will rule on each request in turn and ultimately finds good cause to allow Jones three additional document production requests (requests numbered 1, 2, and 3 below).

1. The cellhouse history for an inmate named Eric Blackman. Jones states that Blackman was in cell 5-B-74 when Jones was transferred to that cell on July 14, 2019. Jones states that he requested protective custody from Sergeant Belford on July 12, 2019. Jones was not granted protective custody and instead moved to cell 5-B-74 with Blackman on July 14. Jones was told by Blackman when he entered the cell that Defendant Wall would be moving Blackman. Blackman was removed from the cell at 6:27 a.m. the following morning. Jones argues Blackman's cellhouse history is relevant to "determine if Lt. Wall followed through on that promise, during a level one deadlock when the investigation of the 7-15-19 incident was being commenced." (Doc. 164, p. 5). Jones states that Wall claims he was not in Unit #5 during the staff assault and excessive force, but if Blackman was moved from cell 5-B-74 by Wall before Wall's 7 a.m. shift, then that would show Wall was in Unit #5 prior to 7 a.m., as Jones argues.

    The Court agrees that if Wall was the staff member who transferred inmate Blackman from the cell before 7 a.m. on July 15, 2019, then that fact would contradict any statement that Wall was not in Unit #5 that morning before his shift. Accordingly, the request is **GRANTED in part.** Defense Counsel is **DIRECTED** to produce to Jones any document containing information regarding Blackman's cell transfer the morning of July 15, 2019.

2. Any statements or documents which indicate Blackman was interviewed by Pinckneyville staff or members of the Internal Affairs Unit in reaction to the staff assault or excessive force involving Jones on July 15, 2019.

    The Court agrees that if inmate Blackman was interviewed about the incident on July 15 involving Jones, his comments and potential testimony may be relevant. The request is **GRANTED in part.** Defense Counsel is to produce to Jones any documents relating to an interview with Blackman or statements made by Blackman regarding the staff assault and excessive force incident involving Jones on July 15, 2019.

3. Images from July 15, 2019 depicting the staff assault and excessive force to Jones.

    The request is **GRANTED.** To the extent there were photos taken that day, such photos would be relevant, and Defense Counsel is **DIRECTED** to produce them.

4. The CD/DVD at Bates #00051 for viewing by Jones.

    This request is **DENIED as moot.** Defense Counsel has indicated that she is going to produce video camera footage for Jones for viewing.

5, 6, and 7. Jones requests various documents regarding procedures and details of the level one lockdown that was implemented on July 15, 2019, at Pinckneyville.

   Requests 5, 6, and 7 are **DENIED.** Jones argues that these documents are relevant because his cellmate "Blackman was moved during a level one deadlock." The Court agrees, as previously stated, that documents recording *who* moved Blackman from the cell would be relevant since Jones contends Wall moved Blackman prior to Wall's 7 a.m. shift, refuting claims that Wall was not in Unit #5 during the excessive force incident that morning. However, Jones does not argue that he was improperly removed from his cell during the level one lockdown, and so, the procedures and processes for moving Blackman during a level one lockdown or the name of the official who implemented the level one lockdown is not relevant to Jones's excessive force claim.

8. The timecard for the week of July 12, 2019, for Sergeant James Belford and documents that record the start and end dates for Belford's vacation.

   This request is **DENIED.** Jones states that Belford's timecard is relevant because this will prove he "conversed with Belford" and requested protective custody. Jones argues that the repeated denial of protective custody for over "half a decade" is relevant to the chain of events that lead to him assaulting an officer and then the resulting excessive force used by Wall. If he had been placed in protective custody as requested, then the events of July 15 would never have transpired. The Court disagrees that these documents are relevant. Even if Jones was improperly transferred to Unit #5, and his request for protective custody was mishandled, documents regarding what days Sergeant Belford worked in no way "bears on" whether Wall used excessive force against Jones, after Jones assaulted another correctional officer. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

9. All documents and papers that will record what an IDOC official is supposed to do when an individual requests protective custody, including who should be notified and what documents are supposed to be filed.

   This request is **DENIED.** Jones may believe that he was improperly denied protective custody and should not have been moved to a double cell on July 14, 2019; however, he has not asserted that Wall was involved in any of the protective custody determinations or his cell movement or placement in July of 2019. Thus, the Court does not find the documents relevant.

10. A document that records the list of duties of Counselor Robert Samolinski for the date of July 15, 2019, and the units and wings to which Samolinski was assigned as a correctional counselor on July 15, 2019.

    This request is **DENIED.** Jones asserts that Counselor Samolinski entered in his accumulative counseling report at 8:19 a.m. on July 15, 2019, after the excessive force incident occurred, that a DCA (double cell assessment) form for double celling had been initiated. (*See* Doc. 28-6). Jones points out there is no entry for a DCA form prior to being double celled in cell 5-B-74 on July 14 when he was transferred. Jones claims the entry is "peculiar" because his protective custody request on July 12 stated he had issues being

    double celled, and he had already been double celled at the time of the entry. As stated above, these assertions regarding staff not following proper process for double celling or protective custody are not relevant to Jones's claim against Wall. There is no link to Wall's conduct.

11. The name of the computer program and the name of the individual who entered disciplinary tickets into the computer system at Pinckneyville for the dates of July 12-15, 2019.

    The request is **DENIED**. Such request is not relevant to whether Wall used excessive force against Jones.

12. A document from Administrative Review Board Chairman Travis Baylor that records the process to be undertaken by IDOC staff when an individual makes a request for protective custody.

    The request is **DENIED**. The Court does not find that information regarding whether staff members at Pinckneyville properly processed Jones's request for protective custody relevant to his claim against Wall.

13. Disciplinary tickets #201901296, # 201901297, and #201901299.

    The request is **DENIED**. Jones does not provide any explanation for why these disciplinary tickets are relevant to his case.

**IV. Motion to Compel Production of Document – DCA Form (Doc. 160, 170)**

As part of his fourth request for production of documents sent to Defendant Wall, Jones requested "DCA form (double cell assessment form) correctional counselor Robert Samolinski indicated he initiated on 7-15-19 prior to 8:19 am after having seen Plaintiff 'face to face'." Jones states that Wall denied his request claiming the document was irrelevant and outside the scope of this case. Jones asks the Court to compel Wall to produce the DCA form. He argues this entry at 8:19 a.m. is an "oddity" because the staff assault and excessive force incident had already occurred around 5:15 a.m. that same morning and he had already been assigned to a single man cell. Jones claims this entry is false and that he was not assessed for a double cell prior to his cell move on July 14. Jones asserts the document will shed light on a timeline of events. Jones also claims the entry and the corresponding document goes "to the heart of the pc request as made to Belford."

The motion is **DENIED**. Jones continues to make the argument that certain documents are

relevant because they show conduct on the part of non-parties that ultimately caused Jones to be wrongly placed in cell 5-B-74. If he had not been in that cell, then the July 15 incident would not have occurred. The facts surrounding Jones's transfer to Unit 5 and the failure by staff to grant his request for protective custody or properly conduct a double cell assessment are not relevant to Walls's alleged conduct on July 15.

**V. Motion to Compel Documents Requested in 5th Request for Document Production (Doc. 161, 171)**

Jones asks the Court to compel the production of documents listed in paragraphs 14 and 15 of his fifth request for document production. In paragraph 14, Jones seeks production of "all documents pertaining to Plaintiff's submissions for transfer from Pinckneyville Correctional Center…from dates of: May 8, 2019 until July 15, 2019." Jones again asserts that "why" the move occurred from Unit 4 to Unit 5, where the excessive force occurred, is relevant. In paragraph 15, Jones seeks a copy of the identification cards for Wall and another staff member named Brian Miller.[1]

The motion to compel is **DENIED.** (Doc. 161). Again, the Court does not find that Jones's requests for transfer submitted to Counselor King, a non-party, is relevant or connected to Wall's alleged conduct. Furthermore, Defense Counsel has volunteered to allow Jones to view, but not possess, institutional photographs of Wall and Miller in coordination with Menard. (Doc. 168, p. 6). The Court finds this compromise sufficient to balance Jones's discovery needs and the concerns for security and safety of Menard staff.

**VI. Review of Deposition Transcript (Doc. 162, 166, 169, 170, 171, 175, 176)**

Jones has filed several documents regarding reviewing a copy of the transcript from his

---

[1] Jones states that Lieutenant Miller has indicated through discovery that he was the lieutenant of the cellhouse and responded to the staff assault on July 15, 2019. Wall has claimed that he was not present in the cellhouse at that time.

deposition. He first filed a letter addressed to the Clerk with questions regarding his deposition that was taken by Defense Counsel on April 18, 2022. (Doc. 162). He asks the following: 1) has it been prepared? 2) why wasn't I notified? and 3) how much will the transcript cost? (*Id.*). Jones then filed a motion to clarify stating that the letter at Doc. 162 was intended for the court reporter via the Clerk of Court. (Doc. 166). He further asserts that as of May 31, 2022, he had not heard from Defense Counsel or the court reporter in regard to the completion of the disposition. He claims he is being denied the right to review his transcript.

Jones next filed a motion to compel. (Doc. 169). In the motion, Jones states that his deposition was taken by Defense Counsel on April 18, 2022. On June 1, 2022, Jones was notified by a correctional officer that he would be participating in a "legal line" to review his deposition transcript. Jones asserts he was not given proper notice regarding the time, date, and location for the review. Jones refused to review his transcript on June 1 believing that the "cage" designated for reviewing the transcript was in the North Two healthcare unit. Jones asserts that on August 29, 2019, while at the North Two healthcare unit waiting for his medical appointment, a sergeant attempted to harm him. Jones has not returned to the healthcare unit in North Two since that incident. Additionally, no litigation representative came to his cell that day, as he requested. Because of his safety and security concerns at Menard, he only exits his cell when under Court order. Jones asks the Court to order Defendant Wall to provide proper notification to him prior to review of the deposition transcript due to the circumstances that took place on August 29, 2019. (Doc. 169).

Jones also filed a motion to supplement the motion to compel. (Doc. 170). Jones adds that prior to the appointment to review his transcript in the healthcare unit of North Two on June 1, he had sent Defense Counsel a letter on April 27, 2022. In the letter, he asked Defense Counsel to inform him when the transcript is completed and states that he will request the transcript directly

Page 9 of 12

from the court reporter's office, as he "will not be dealing directly with Menard's litigation team." He explains that if the litigation team requires him to leave his cell to make corrections to the transcript, he will refuse. Jones asserts in the letter that there is no code of corrections which prohibits him from having his transcript in his cell for review. Jones claims that he did not receive a response to his letter.

The motion to clarify (Doc. 166), and the motion to supplement (Doc. 170) are **GRANTED.** The motion to compel notification of deposition transcript review (Doc. 169) is **DENIED.** Under Federal Rule of Civil Procedure 30, Jones is allowed to review and make changes to his deposition transcript within thirty days of it becoming available, if requested "before the deposition is completed." FED. R. CIV. P. 30(e). However, Rule 30 does not specify the manner in which a deponent is to review the transcript. *See Parkland Venture, LLC v. City of Muskego,* 270 F. R.D. 439, 441 (E.D. Wisc. 2010) (holding that all that is required under Rule 30 is to make the transcript "available" for reviewing). Jones's reasons for refusal to review the transcript on June 1, 2022, do not provide a basis for the Court to interfere in Menard procedures for allowing an inmate to review a deposition transcript. Neither will the Court compel Defense Counsel or staff at Menard to provide Jones with notice prior to review.

Defense Counsel is **DIRECTED** to ensure Jones is provided another opportunity to review his deposition transcript prior to the close of discovery. Jones is **WARNED** that if he refuses to review the transcript at the time and place designated by Menard staff, then he will not be given another opportunity to review and make changes to the deposition transcript. Jones is also **ADVISED** that "[a]n inmate is not constitutionally entitled to a free copy of documents prepared at the expense of another." *Mounson v. Chandra,* No. 04-cv-365, 2009 WL 1209045, at *1 (S.D. Ill. 2009) (citing *United States v. McCollum,* 426 U.S. 317 (1976)). If Jones would like a copy of his deposition for his records, he must purchase a copy from the court reporter.

### VII. Motion to Clarify (Doc. 175)

The Court **DENIES** the motion to clarify filed on June 21, 2022. (Doc. 175). The motion does not add clarity to any of the pending motions, and Jones merely restates factual allegations he has asserted elsewhere in the record.

### VIII. Motion to Supplement Doc. #79 (Doc. 177)

The Court **DENIED** the motion to supplement Doc. #79. Doc. #79 was a motion to compel defense counsel recusal that the Court already dismissed in November 2021. (Doc. 84). The Court will not accept further briefing on the issue.

### IX. Deadlines

All discovery must be completed by **September 7, 2022**. Any dispositive motion on the merits of Jones's claims shall be filed by **October 7, 2022**. All *Daubert* motions shall be filed by **October 7, 2022.**

#### DISPOSITION

For the reasons stated above, the motion to compel service of subpoena (Doc. 128) is **GRANTED in part.** The Clerk of Court is **DIRECTED** to send to the litigation coordinator at Menard a single signed, but otherwise blank subpoena. When filling out the subpoena, Jones is reminded to give a reasonable time for response by marking the "Date and Time:" field as follows: "14 days after receipt." Defense Counsel is **DIRECTED** to coordinate with the ligation coordinator to ensure that the subpoena is delivered to Jones and that he is able to make copies of both subpoenas in his possession. Defense Counsel **SHALL FILE** a notice with the Court by **July 28, 2022,** confirming compliance with this Order and that Jones received the subpoenas and was able to make the required copies.

The motion to compel production of document (incident report) (Doc. 134) is **DENIED.**

The motion to compel additional (13) requests for production of documents (Doc. 143) is

**GRANTED in part.** Jones is allowed the three additional requests for production as stated in this Order. Defense Counsel is **DIRECTED** to produce to Jones 1) any document containing information regarding Blackman's cell transfer the morning of July 15, 2019; 2) any documents relating to an interview with Blackman or statements made by Blackman regarding the staff assault and excessive force incident involving Jones on July 15, 2019; and 3) any photographs taken on or after July 15, 2019, in relation to the staff assault and excessive force incident involving Jones. The discovery shall be produced by **August 5, 2022.**

The motion to compel production of document (DCA form) (Doc. 160) and the motion to compel production of documents (Doc. 161) are **DENIED.**

The motion to clarify (Doc. 166) and the motion to supplement (Doc. 170) are **GRANTED.**

The motion to compel notification of 4-18-22 deposition transcript review (Doc. 169) is **DENIED.** Defense Counsel is **DIRECTED** to ensure Jones is provided another opportunity to review his deposition transcript prior to the close of discovery. Jones is **WARNED** that if he refuses to review the transcript at the time and place designated by Menard staff, then he will not be given another opportunity to review and make changes to the deposition transcript. If Jones would like a copy of his deposition for his records, he must purchase a copy from the court reporter.

The motion to clarify (Doc. 175) and the motion to supplement (Doc. 177) are **DENIED.**

All discovery must be completed by **September 8, 2022**. Any dispositive motion on the merits of Jones's claims shall be filed by **October 8, 2022**. All *Daubert* motions shall be filed by **October 8, 2022.**

IT IS SO ORDERED.

DATED:   June 8, 2022

                                          *s/Stephen P. McGlynn*
                                          **STEPHEN P. MCGLYNN**
                                          **United States District Judge**